EDGAR LOOMIS

*v.*

WILLIAM COWEN.

*Filed at Ottawa June 16, 1883.*

FORMER ADJUDICATION—*what questions will be considered on a second appeal.* Where this court has decided, on appeal in an action of ejectment, that a mortgage under which title is attempted to be deduced, has been satisfied as to a part of the tract of land, and that a sale of such part under the mortgage passed no title, and the cause is remanded, and the trial court finds for the defendant in ejectment, in accordance with the decision of this court, and the plaintiff brings the case here again, having shown below no other title than on the first trial, the decision of this court on the question so presented must be regarded as *res judicata*, and can not be again called in question.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Messrs. BISBEE, AHRENS & HAWLEY, for the appellant.

Mr. C. M. HARRIS, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Hall held the legal title to a tract of land, subject to a mortgage to Ayers and Hamilton for about $20,000. Hall,

by a written contract, agreed to sell the west half of the whole tract to Smith for about $18,000, of which $4000 was paid down, and the balance was to be paid in three annual installments. To induce Smith to buy, Ayers and Hamilton agreed, in writing, that the part purchased by Smith should be held for the payment of only one-half of the then unpaid part of the mortgage debt. Smith then agreed, in writing, with Cowen, to sell to him the land in controversy, being lot 17, and being a part of the land embraced in Smith's contract of purchase. The price Cowen was to pay for this lot to Smith was $625. He paid $181, and took possession, under the contract, in the spring of 1857, and has been in possession ever since. Smith, being unable to pay Hall for the land bought of Hall, for a nominal consideration reconveyed the west half of the whole tract to Hall, and Hall conveyed the whole tract to Bush. Afterwards, and in the year 1871, Cowen, claiming under his contract from Smith, paid to Bush an amount of money greater than the amount of principal and interest unpaid upon that contract, and Bush made a deed conveying to Cowen this lot 17.

Before this deed to Cowen, and in 1863, the mortgage debt not being fully paid, the owner of the debt, Sherman, (assignee of Ayers and Hamilton) caused the whole tract to be sold, under the mortgage, for the unpaid part of the debt,—part to one Nichols, and part to one Colfax,—and in pursuance of these sales under the mortgage the whole tract was conveyed, —part to Nichols, and part to Colfax. All these contracts, sales and conveyances were recorded in apt time, except the contract of Smith with Cowen, and as to that, Cowen was in possession of the lot named in his contract. Nichols and Colfax conveyed to Cleaver. Through *mesne* conveyances, Loomis, the appellant, acquired the title to this lot 17, which passed under the said mortgage sale. After the purchase of Smith, and before the sale under the mortgage, Hall or Bush had made payments upon that unpaid part of the mortgage

debt, one-half of which, only, was to be a charge upon the west half of the tract. These payments amounted to more than half of that unpaid part of the mortgage debt, but no special application of such payments had been made to the relief of the west half of the whole tract. At the first trial of this action Loomis recovered judgment against Cowen. That judgment, on appeal to this court by Cowen, was reversed, (*Cowen* v. *Loomis*, 91 Ill. 132,) and the cause remanded for a second trial. On that trial the finding and judgment were for Cowen, and Loomis appealed from that judgment.

When the case was before this court on the appeal by Cowen, it was decided, upon the foregoing facts, that as against Cowen the payments made before the mortgage sale occurred had discharged from the lien of the mortgage all that part of the tract which Hall had sold to Smith, and hence as against Cowen no title passed by the sale under the mortgage, and this sale under the mortgage being the only source of Loomis' title, he could not recover on these facts alone. The writer of this opinion did not then, and does not now, concur in the view then adopted by this court. But as between these parties that proposition became *res judicata*, and can not lawfully be called in question on this appeal. Unless, therefore, upon the second trial plaintiff showed title otherwise, the circuit court could not lawfully give judgment in his favor. The evidence on the second trial does not tend to vary the case in any respect save one. Proofs were offered tending to prove that when Loomis was about to buy the lot from one holding under the mortgage sale, he applied to Cowen to learn what claim, if any, he had to the property in question, and that Cowen orally disclaimed all legal right to the lot, and that on the faith of this disclaimer Loomis, with the knowledge and consent of Cowen, bought and paid for the lot. The evidence on this question was contradictory.

Waiving the question whether a plaintiff in ejectment can recover upon an estoppel of the kind claimed, we, upon ex-

amination of the proofs, can not say that the alleged estoppel was so clearly proven that it was error to find otherwise. No instructions or propositions of law are preserved in the record showing distinctly upon what view of the law this finding did rest; but although the court at first refused to permit proof tending to establish the facts alluded to as the basis of estoppel, such proof was subsequently admitted and received by the court, and we must assume that the finding of fact was against appellant.

We find no sufficient ground upon which to reverse this judgment, and it is therefore affirmed.

*Judgment affirmed.*

Mr. Justice Scott, dissenting: ·

Dissenting, as I do, from the decision of the majority of the court, I desire to express my views on the whole case.

It is a familiar rule, the legal title prevails in an action of ejectment. Such a title can not be called in question in a court of law. It must, if at all, be done in a court of equity. Both parties in this case claim the title to the property in controversy that was in Winchester Hall. The title to block ninety (90), which includes the lot involved in the present litigation, was in Enos Ayers and James G. Hamilton. Of this fact neither party make any controversy. On the 23d day of May, 1856, Ayers and Hamilton, their wives joining with them in the execution of the deeds, conveyed the whole block numbered ninety (90) to Winchester Hall. That is the admitted source of Hall's title, and of all the title he ever had to the property. The deed from Ayers and Hamilton was not recorded until the 18th day of October, 1856, but whether it was delivered before that date or not does not appear. On the last named day Hall executed and delivered to Ayers and Hamilton a mortgage on the entire block, to secure the purchase money agreed to be paid to them, which mortgage was recorded the same day, and it may reasonably

be presumed the filing of the deed and mortgage for record were simultaneous acts. The mortgage contained the usual power of sale. In this action plaintiff, Edgar Loomis, claims the legal title to the property, which is a part of the west half of block ninety (90), under the mortgage made by Hall to Ayers and Hamilton, which was afterwards, as will appear as the discussion goes on, foreclosed by a sale under the power contained in the mortgage, by the legal holder of the indebtedness secured. The defendant, William Cowen, deraigns his title to the same property, whatever that title may be, by *mesne* conveyances from Hall, the first of which was made after the execution and recording of his mortgage to Ayers and Hamilton, to secure the purchase money of the property. It is plain, if the mortgage was in fact foreclosed in a manner to cut off the equity of redemption that was in Hall and those claiming under him, that then plaintiff in this suit has the legal title to the property, and in this form of action it will prevail, no matter whether defendant has equitable rights in the property or not. Under the rulings of this court the mortgagee of lands is held, in law, the owner of the fee, having the *jus in re* as well as *ad rem,* and entitled to all the rights and remedies which the law gives such owner, and may, after condition broken, maintain ejectment against the mortgagor. (*Oldham* v. *Pfleger,* 84 Ill. 102; *Johnson* v. *Watson,* 87 id. 535.) The facts of this case bring it precisely within the principle of the cases cited. It appears that Ayers and Hamilton, the mortgagees, by quitclaim deed conveyed the entire block to Benjamin F. Sherman, and plaintiff deraigns his title directly from Sherman by *mesne* conveyances. On the other hand, Hall conveyed his interest in block ninety (90) to Louis Bush, and Bush conveyed the lot in controversy to defendant. Under this state of facts all that Hall could convey to Bush was his equity of redemption in the premises. It was all the title that was in him, and of course Bush could convey to defendant no greater interest

in the property than he had acquired from Hall. It would seem clear the utmost defendant could claim, even if the mortgage was not foreclosed so as to cut off the equity of redemption, is, that he has an equitable interest in the property. But the rule of law is well settled, at least in this State, that if the legal title to lands is challenged, it can not be adjudicated in a court of law. The aid of a court of equity must be invoked in such cases. Should it be conceded defendant has an equitable interest in the property, it could not be set up as a defence to this action. This view of the case does not seem to have been presented when the case was before this court on a former appeal, or if it was, it was not discussed in the opinion or passed upon by the court, and the question now made is now open to determination, unaffected by the former decision. *Cowen* v. *Loomis*, 91 Ill. 132.

There is another branch of the case that will now be considered. On the 23d day of March, 1857, Hall entered into an agreement with Joseph Smith to convey to him, by warranty deed, the west half of block ninety (90) on the payment of $18,000, one-fourth cash, and the balance in equal annual installments. Time was made of the essence of the contract. That contract Smith was unable to perform, and afterwards, on the 28th day of May, 1860, he reconveyed to Hall the property he had contracted to sell to him. That was really a cancelling of the contract between Hall and Smith, and so the parties seem to have regarded it. According to the testimony of defendant, on the 1st day of March, 1857, he entered into a contract with Smith, by which Smith agreed to convey to him the property in controversy, which is a part of the west half of block ninety (90), on the payment to him of $625, part in cash, and the balance in installments. On his contract with Smith defendant seems to have paid $181, and then ceased to make further payments.

It will be seen that on the back of the contract between Hall and Smith there was written an agreement, signed by

Ayers and Hamilton, of the date of March 23, 1857, to the effect that in the event of payment to them by Hall, at maturity, of the installment of the purchase money to become due on May 23, 1857, they would hold the west half of block ninety (90) liable for only one-half of the residue of the unpaid purchase money owing by Hall. The contract between Smith and Hall, with the agreement indorsed thereon, was recorded on the 24th day of March, 1857. It is under that agreement he claims that he acquired title to the lot in suit. There are at least two conclusive answers to the position taken. One reason is, it does not appear certainly that defendant obtained title to this property under his contract with Smith. As has been seen, defendant ceased to make further payments to Smith, and no further payments were in fact made by him to any one under his contract with Smith. Defendant seems to have made a new contract with Bush for the property, and paid him for it in four annual installments, of $200 each. Four notes, of $200 each, executed by defendant, payable to his own order, and by him indorsed, were produced, and his testimony is, that he paid them, and that "they were given for the purchase money on this deed from Bush." That would appear to be a purchasing of the property from Bush directly, under a new contract. But a more satisfactory reason is, that Bush never had the legal title to the property, and of course he could not convey to defendant what he did not have. As has been seen, Smith was unable to comply with his contract with Hall, and it was in fact cancelled. That was an end of the contract between Smith and Hall, and with the cancellation of that contract the agreement of Ayers and Hamilton, written on the back of it, became inoperative. Thereafter there was no contract to perform, and no one had the slightest interest in having further payments on the notes secured applied in reduction of the mortgage indebtedness on the west half of the block, and no one gave the matter the slightest attention. Hall

was obligated to pay the entire indebtedness, and Smith had ceased to have any interest in the property. Bush took his deed from Hall for the property subject to the mortgage indebtedness. As has been seen, by the terms of the contract between Smith and Hall time was made an essential part of it. A failure to make payments as they matured authorized Hall to declare the contract forfeited. Had Hall done so, it would hardly be insisted that any one could thereafter claim anything under the contract. Defendant's interest in the property would be forfeited when Smith's interest should be declared forfeited. Certainly he could claim nothing under the contract that Smith could not do. What possible difference could it make whether Hall declared the contract forfeited for non-compliance with its terms, or whether it was cancelled by Smith's consent, when he discovered he could not perform it? In either event the contract was absolutely at an end, and how it was annulled is a matter of no consequence.

It will be observed that Bush did not attempt to convey this property to defendant until the 25th day of February, 1871. In 1863 Bush's equity of redemption in the property,— and that was all he ever had,—was cut off by a sale made by Sherman, who was the assignee of Ayers and Hamilton, under the power contained in the mortgage. Whether that sale was regular or irregular, it was effectual to bar the equity of redemption of the mortgagor, and all claiming under him, until it should be set aside by a court of competent jurisdiction, and that has not been done. That sale under the power contained in the mortgage has not only not been set aside, but it has been expressly confirmed by this court in *Bush et al.* v. *Sherman,* 80 Ill. 160. A bill was filed by Bush and others, asking to have set aside Sherman's deed, as trustee, to Nichols and Colfax, who were purchasers at the trustee's sale, and their deeds to Mrs. Cleaver, and complainant let in to redeem the property on payment of what was

due on the mortgage, and if, for any reason, that specific relief could not be granted, they might have a decree for compensation. It appeared in that case the installment maturing on the 23d day of May, 1857, was in fact paid, but before any other payments were made Smith reconveyed the west half of the block to Hall, he being unable to comply with his contract, and hence it was said there was no necessity for having further payments made by Hall applied in reduction of the incumbrance on that portion of the property, and neither Hall nor any one else ever asked to have them, nor were they ever, so applied. It was therefore held, there was no release of the west half of the block under the agreement with Ayers and Hamilton, and that the sale made by the trustee was valid.

Great stress is laid on that clause of the opinion in *Bush* v. *Sherman* which says, "clearly, any one claiming under Smith, as grantee, would be entitled to the benefit of the contract, but Hall claimed nothing as the grantee of Smith." It might have been added, with great propriety, that nobody else claimed under the Smith contract, for it is said, in the very next sentence, that "what was done was the cancellation of the contract of sale—that was the effect of the reconveyance." Nothing could have been meant by the expression used more than to say, had Smith assigned his contract with Hall, and such assignee had performed it, he would have been entitled to the benefit of the agreement with Ayers and Hamilton; but there is no pretense Smith ever assigned his contract with Hall to any one, or that any one ever made the slightest effort to perform it. But be the law on this branch of the case as it may, in no view that can be taken did defendant acquire, by his deed from Bush, anything more, if that, than an equitable title to the property, and that can not prevail against the legal title of plaintiff.

I am therefore of opinion the judgment of the Superior Court should be reversed.